# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

---

Wells Fargo Bank, N.A.,

                Plaintiff,

    v.

Celebrity Home Loans, LLC,

                Defendant.

Case No. 23-cv-1597

**COMPLAINT**

---

Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo"), for its complaint against defendant Celebrity Home Loans, LLC as successor in interest to Apex Home Loans, Inc. ("Celebrity") alleges as follows:

## Introduction

1.     Celebrity had a "correspondent lender" relationship with Wells Fargo.

2.     In general, Celebrity issued loans either to home buyers purchasing new residences or to homeowners who wish to refinance their residences. Those loans are secured by mortgages on the borrowers' residences.

3.     Celebrity then sold the mortgage loans to Wells Fargo.

4.     A written agreement governs the terms under which Celebrity sold mortgage loans to Wells Fargo. The agreement required Celebrity to: (1) represent and warrant that each mortgage being sold has certain characteristics; (2) repurchase from Wells Fargo any mortgage that does not possess those characteristics; and (3) reimburse

Wells Fargo for certain losses, costs, and expenses associated with any repurchased mortgage.

5.      Celebrity violated its representations and warranties by selling to Wells Fargo at least one mortgage loan that did not have the required characteristics.

6.      Celebrity further breached its contractual obligations by refusing to repurchase and/or indemnify Wells Fargo for its losses on this loan and to indemnify Wells Fargo for certain losses, costs, and expenses that Wells Fargo incurred.

7.      Celebrity also refused to pay fees due to Wells Fargo with respect to other transactions under the terms of the parties' contract.

8.      Thus, Wells Fargo is suing to enforce Celebrity's contractual obligations.

## Parties

9.      Plaintiff Wells Fargo Bank, N.A. is a national banking association whose articles of association designate its main office as located in Sioux Falls, South Dakota, thus making it a citizen of South Dakota for purposes of diversity jurisdiction.

10.     Defendant Celebrity Home Loans, LLC, is an Illinois limited liability company with its principal place of business in Oakbrook Terrace, Illinois.  According to corporate filings with the Illinois Secretary of State's office, the managers of Celebrity are: (1) Celebrity Financial, Inc. (citizen of St. Thomas, VI); (2) David Hansen (citizen of Illinois); (3) Peter Gabrione (citizen of Illinois); (4) David Robnet (citizen of Illinois); (5) Paul Garrigues (citizen of Illinois); and (6) Eric Meadow (citizen of Illinois).  Therefore, all of Celebrity's member/managers are citizens of the Virgin Islands or Illinois for purposes of diversity jurisdiction

**Jurisdiction and Venue**

11.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)

because Wells Fargo and Celebrity are citizens of different states (South Dakota, St.

Thomas (Virgin Islands), and Illinois, respectively) and the matter in controversy exceeds

the sum or value of $75,000, exclusive of interest and costs.

12.     This Court has personal jurisdiction over Celebrity because Celebrity

contractually waived any objection to this Court's personal jurisdiction and agreed that

any lawsuit between the parties would be pursued in Minnesota.

13.     Venue is proper in this Court under 28 U.S.C. § 1391(a)(2) because a

substantial part of the events giving rise to the claims asserted in this action occurred in

this District. Specifically, Wells Fargo has substantial operations and personnel in

Minnesota, including portions of the correspondent lending channel.

**Facts**

**A.     The Parties Entered into the Loan Purchase Agreement.**

14.     On or about May 28, 2020, Celebrity and Wells Fargo entered into an

Amended and Restated Loan Purchase Agreement (the "LPA"). A copy of the LPA is

attached hereto as Exhibit 1. The LPA states the terms under which Celebrity may sell

residential mortgage loans to Wells Fargo.  Wells Fargo had previously entered into an

Amended and Restated Loan Purchase Agreement with Apex Home Loans, Inc. ("Apex

LPA").  A copy of the Apex LPA is attached hereto as Exhibit 2.  By written agreement

dated March 17, 2020, Celebrity Home Loans, LLC was assigned "all duties and liabilities

of Seller [Apex Home Loans, Inc.] under the Loan Purchase Agreement, including,

without limitation, all representations and warranties contained in the Loan Purchase Agreement which pertain to any and all Mortgage Loans purchased by Wells Fargo from the Seller [Apex Home Loans, Inc.]" by Apex Home Loans, Inc.  A copy of this signed assignment letter is attached hereto as Exhibit 3.

15.     Paragraph 1 of the LPA incorporates the terms of the Wells Fargo Funding Seller Guide ("Seller Guide"). The Seller Guide sets forth the representations and warranties that Celebrity makes to Wells Fargo for every mortgage that Celebrity sells to Wells Fargo.

16.     Together, the LPA and Seller Guide (collectively, the "Contract") form the complete agreement between the parties.

17.     In the Contract, Celebrity agreed that it would sell to Wells Fargo only mortgage loans that met the requirements described in the Seller Guide.

18.     Wells Fargo sold the loans that it purchased from Celebrity to various investors, including Fannie Mae and Freddie Mac, which are government-sponsored enterprises chartered by Congress to keep liquidity flowing to mortgage lenders such as local and national banks, thrifts, credit unions, and other financial institutions.

19.     When loans that Celebrity sold to Wells Fargo, and Wells Fargo subsequently sold to an investor, did not meet the requirements of the purchasing investor, that purchasing investor would require Wells Fargo to repurchase and/or indemnify the investor for its losses on those loans.

20.     When those loans were subsequently reviewed by Wells Fargo and found to not meet the requirements described in the Seller Guide between Wells Fargo and

Celebrity (and were therefore ineligible for sale under the Contract), then Wells Fargo, in turn, is entitled to have Celebrity repurchase and/or indemnify Wells Fargo for its losses on those loans that do not meet the requirements of the Seller Guide.

21.     In addition to setting forth Celebrity's representations and warranties regarding the characteristics of the mortgage loans that Celebrity sold to Wells Fargo, the Contract also specified remedies for Wells Fargo should Celebrity's contractual representations or warranties prove untrue with respect to a mortgage loan.

22.     In accordance with section 305.03 of the Seller Guide, Celebrity agreed that it would repurchase any loan that did not satisfy the contractual representations and warranties it had made to Wells Fargo.

23.     In accordance with section 305.10 of the Seller Guide, Celebrity further agreed to indemnify Wells Fargo for any liabilities, costs, and expenses, expressly including attorneys' fees, resulting from Celebrity's breach of any representation or warranty.

24.     In accordance with section 305.10 of the Seller Guide, Celebrity also expressly agreed to indemnify Wells Fargo for losses resulting from the Real Estate Owned ("REO") process by which Wells Fargo acquires title to a mortgaged property through such means as foreclosure, taking a deed in lieu of foreclosure, abandonment of the property, or other reclamation of the property.

**B.      Celebrity Breached Its Contractual Representations and Warranties with Regard to the "Santa Fe Loan" It Sold to Wells Fargo.**

25.      Celebrity sold at least one mortgage loan to Wells Fargo that violated Celebrity's representations and warranties as set forth in the Contract.

26.      On or around November 16, 2021, Celebrity sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 2199) secured by a property in Santa Fe, New Mexico (the "Santa Fe Loan"). A copy of the portion of the Loan Purchase Schedule, dated April 13, 2018, reflecting Wells Fargo's purchase of the Santa Fe Loan is attached hereto as Exhibit 4.

27.      The Santa Fe Loan has an outstanding balance of at least $415,848.48 in principal, interest, and escrow advance, in addition to applicable fees and bears an interest rate of 4.875 %.

28.      The loan file for the Santa Fe Loan had a program violation relating to the borrower's credit.

29.      The Santa Fe Loan did not meet the requirements of the Seller Guide, and Celebrity's sale of the Santa Fe Loan constituted a violation of Celebrity's contractual representations and warranties to Wells Fargo.

30.      Wells Fargo sustained a loss as a result of the Santa Fe Loan not meeting the requirements of the Seller Guide.

31.      On or about March 7, 2023, Wells Fargo sent an invoice to Celebrity for the amount that Celebrity owed to Wells Fargo at that time to repurchase the Santa Fe Loan

and/or indemnify Wells Fargo for its loss on the Santa Fe Loan and to pay fees and penalties as specified in the Contract.

32.     Celebrity refused to repurchase the Santa Fe Loan and/or indemnify Wells Fargo for its loss on the Santa Fe Loan and refused to pay fees and penalties as specified in the Contract.

33.     The amount that Celebrity currently owes to Wells Fargo to repurchase the Santa Fe Loan and pay fees and penalties under the Contract is at least $415,848.48.

**C.     Celebrity Breached Its Contractual Representations and Warranties with Regard to the "Algonquin Loan" It Sold to Wells Fargo.**

34.     Celebrity sold at least one mortgage loan to Wells Fargo that violated Celebrity's representations and warranties as set forth in the Contract.

35.     On or around July 13, 2018, Celebrity sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 8852) secured by a property in Algonquin, Illinois (the "Algonquin Loan"). A copy of the portion of the Loan Purchase Schedule, dated July 12, 2018, reflecting Wells Fargo's purchase of the Algonquin Loan is attached hereto as Exhibit 5.

36.     The Algonquin Loan has an outstanding balance of at least $380,694.18 in principal, interest, and escrow advance, in addition to applicable fees and bears an interest rate of 2.875 %.

37.     The loan file for the Algonquin Loan had a program violation relating to the inadequate income documentation of the borrower.

38.     The Algonquin Loan did not meet the requirements of the Seller Guide, and Celebrity's sale of the Algonquin Loan constituted a violation of Celebrity's contractual representations and warranties to Wells Fargo.

39.     Wells Fargo sustained a loss as a result of the Algonquin Loan not meeting the requirements of the Seller Guide.

40.     On or about May 5, 2023, Wells Fargo sent an invoice to Celebrity for the amount that Celebrity owed to Wells Fargo at that time to repurchase the Algonquin Loan and/or indemnify Wells Fargo for its loss on the Algonquin Loan and to pay fees and penalties as specified in the Contract.

41.     Celebrity refused to repurchase the Algonquin Loan and/or indemnify Wells Fargo for its loss on the Algonquin Loan and refused to pay fees and penalties as specified in the Contract.

42.     The amount that Celebrity currently owes to Wells Fargo to repurchase the Algonquin Loan and pay fees and penalties under the Contract is at least $380,694.18.

**D.      Celebrity Breached Its Contractual Representations and Warranties with Regard to the "Hercules Loan" It Sold to Wells Fargo.**

43.     Celebrity sold at least one mortgage loan to Wells Fargo that violated Celebrity's representations and warranties as set forth in the Contract.

44.     On or around July 8, 2022, Celebrity sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 9831) secured by a property in Hercules, California (the "Hercules Loan"). A copy of the

portion of the Loan Purchase Schedule, dated July 7, 2022, reflecting Wells Fargo's purchase of the Hercules Loan is attached hereto as Exhibit 6.

45.     The Hercules Loan has an outstanding balance of at least $704,169.93 in principal, interest, and escrow advance, in addition to applicable fees and bears an interest rate of 6.375 %.

46.     The loan file for the Hercules Loan had a program violation relating to the income of the borrower being inadequately documented.

47.     The Hercules Loan did not meet the requirements of the Seller Guide, and Celebrity's sale of the Hercules Loan constituted a violation of Celebrity's contractual representations and warranties to Wells Fargo.

48.     Wells Fargo sustained a loss as a result of the Hercules Loan not meeting the requirements of the Seller Guide.

49.     On or about May 5, 2023, Wells Fargo sent an invoice to Celebrity for the amount that Celebrity owed to Wells Fargo at that time to repurchase the Hercules Loan and/or indemnify Wells Fargo for its loss on the Hercules Loan and to pay fees and penalties as specified in the Contract.

50.     Celebrity refused to repurchase the Hercules Loan and/or indemnify Wells Fargo for its loss on the Hercules Loan and refused to pay fees and penalties as specified in the Contract.

51.     The amount that Celebrity currently owes to Wells Fargo to repurchase the Hercules Loan and pay fees and penalties under the Contract is at least $704,169.93.

### E.   Celebrity Refused to Pay Additional Fees and Expenses Due Under the Contract for Its Failure to Deliver Loans or Loan Documents

52.   The Contract contains provisions that require Celebrity to pay costs and/or fees to Wells Fargo for situations in which Celebrity:

    a.   sells loans to Wells Fargo that subsequently require funding adjustments;

    b.   committed to sell loans to Wells Fargo but failed to do so;

    c.   failed to correctly disclose mortgage-insurance premiums on the final Truth-in-Lending statement;

    d.   offered loans to Wells Fargo that did not close, were returned, or were funded but for which underwriting fees were not collected at the time of purchase, in violation of sections 500.01, 800.03, and/or 805.01 of the Seller Guide;

    e.   failed to ensure that taxes were paid on a timely basis, in violation of sections 560.06 through 560.07 of the Seller Guide;

    f.   failed to properly register or transfer loans with MERS;

    g.   failed to provide final loan documents, such as original mortgages or deeds of trust, in violation of sections 565.01 and 565.06 of the Seller Guide;

    h.   sold loans to Wells Fargo that had title defects associated with those loans;

      i.   understated charges by more than the allowable tolerance under the Truth in Lending Act; or

      j.   locked loans for sale to Wells Fargo that did not fund.

53.     Celebrity failed to comply with the contractual provisions described above with respect to at least six types of underwriting fees, and consequently owes the costs and/or fees identified in the Client Billing Invoice dated February 15, 2023, attached hereto as Exhibit 7.  These fees include escrow deficiencies, miscellaneous fees, tax penalties, pairoff fees, early payoffs and funding adjustments.

54.     On or around March 7, 2023, Wells Fargo first sent Celebrity invoices that identified costs and fees that Celebrity owes to Wells Fargo under the terms of the Contract and requested payment.

55.     In violation of the Contract, Celebrity has refused to pay Wells Fargo for costs and fees in excess of $56,435.42 as set for in the Client Billing Invoice dated February 15, 2023.

## COUNT I
### (Breach of Contract—Specific Performance)

56.     Wells Fargo incorporates the averments in the preceding paragraphs as if fully restated herein.

57.     Celebrity breached the Contract when it sold the Santa Fe Loan, Algonquin Loan and Hercules Loan to Wells Fargo. With respect to the sale of the Santa Fe Loan, Algonquin Loan and Hercules Loan, Celebrity violated representations and warranties as set forth in the Seller Guide.

58.     The Contract, including but not limited to section 305.03 of the Seller Guide, requires Celebrity to repurchase the Santa Fe Loan, Algonquin Loan and Hercules Loan as a consequence of Celebrity's breach of representations and warranties set forth in the Seller Guide.

59.     Wells Fargo notified Celebrity that Celebrity had breached representations and warranties for the Santa Fe Loan, Algonquin Loan and Hercules Loan, and demanded that Celebrity repurchase the loans.

60.     To date, Celebrity has refused to repurchase the Santa Fe Loan, Algonquin Loan and Hercules Loan.

61.     Celebrity has materially breached the Contract, including section 305 of the Seller Guide, by refusing to honor its obligation to repurchase the Santa Fe Loan, Algonquin Loan and Hercules Loan.

62.     Wells Fargo is entitled to an order requiring Celebrity to repurchase the Santa Fe Loan, Algonquin Loan and Hercules Loan.

## COUNT II
### (Breach of Contract—Loan Representations and Warranties)

63.     Wells Fargo incorporates the averments in the preceding paragraphs as if fully restated herein.

64.     Celebrity breached its representations and warranties as set forth in the Seller Guide with regard to the sale of the Santa Fe Loan, Algonquin Loan and Hercules Loan. Celebrity's sale of these loans to Wells Fargo therefore breached the Contract.

12

65.     Wells Fargo has demanded, in accordance with the Contract terms, that Celebrity repurchase and/or indemnify Wells Fargo for its losses on the Santa Fe Loan, Algonquin Loan and Hercules Loan. Celebrity has further breached the Contract by refusing to repurchase the loans and/or indemnify Wells Fargo for its losses on the loans.

66.     Wells Fargo has demanded that Celebrity pay certain fees and costs, as specified in the Contract, arising from the Santa Fe Loan, Algonquin Loan and Hercules Loan. Celebrity has further breached the Contract by failing to pay fees and costs for these loans as specified in the Contract.

67.     Wells Fargo has suffered damages as a result of Celebrity's breaches of the Contract in the amount of at least $1,557,148.01. This amount includes the unpaid balance, accrued interest, escrow advance, and service-release premium, as applicable, plus other fees and costs, for the Santa Fe Loan, Algonquin Loan and Hercules Loan.

## COUNT III
## (Breach of Contract—Contractual Loan Costs and Fees)

68.     Wells Fargo incorporates the averments in the preceding paragraphs as if fully restated herein.

69.     Wells Fargo incurred costs and/or fees with respect to at least three underwriting fees associated with the loans that Celebrity sold or offered to sell to Wells Fargo because the loans either did not close, were returned, or funded and the underwriting fees were not collected at the time of purchase.

70.     Wells Fargo billed Celebrity for those costs and fees, but Celebrity has refused to pay them.

71.    Celebrity breached the Contract through the foregoing acts and omissions.

72.    Wells Fargo has suffered damages as a result of Celebrity's breach of the Contract in the amount of at least $56,435.42.

### COUNT IV
### (Contractual Attorneys' Fees)

73.    Wells Fargo incorporates the averments in the preceding paragraphs as if fully restated herein.

74.    Under the Contract, Celebrity agreed to indemnify Wells Fargo for all costs, including attorneys' fees, incurred by Wells Fargo in enforcing its rights under the Contract.

75.    As a result of Celebrity's failure to honor its contractual obligations, Wells Fargo has incurred costs and attorneys' fees to enforce its rights under the Contract.

76.    Wells Fargo is entitled to recover the attorneys' fees and related costs that it has incurred and will incur in prosecuting this lawsuit to enforce its rights under the Contract.

**WHEREFORE**, Wells Fargo Bank, N.A., respectfully asks that the Court:

1.    Enter an order requiring Celebrity to repurchase the Santa Fe Loan, Algonquin Loan and Hercules Loan in accordance with the Contract;

2.    Enter judgment in favor of Wells Fargo and against Celebrity in the amount of all damages, costs, and expenses that Wells Fargo has suffered and will suffer in the future as a result of Celebrity's breaches of its contractual obligations (an amount currently in excess of $1,557,148.01), plus all costs and expenses (including attorneys'

14

fees) that Wells Fargo incurs in connection with this litigation, plus pre-judgment interest at the legal rate; and

3.      Award any additional relief that the Court deems just and equitable.

Dated: May 30, 2023

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Joelle Groshek*
Joelle Groshek (#0398377)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
Telephone: (612) 766-7000
Fax: (612) 766-1600
joelle.groshek@faegredrinker.com

and

Lance W. Lange, *pro hac vice motion forthcoming*
Iowa Bar No. AT0004562
801 Grand Avenue, 33rd Floor
Des Moines, IA  50309
Telephone: (515) 447-4725
Fax: (515) 248-9010
lance.lange@faegredrinker.com

*Counsel for Plaintiff Wells Fargo Bank, N.A.*